LAMAR *et al. vs.* McDANIEL, governor.

1. Under the act of March 19, 1869, entitled an act to authorize improvements to be made on the reserve at the Indian Spring, to protect the same from trespass, and for other purposes therein mentioned, the agent of the State was not compelled to go beyond the boundaries of the reserve to open and keep in repair the roads and paths between the boundaries and the public highway for the accommodation of those visiting the spring, nor was he compelled to erect bridges outside of the reserve to facilitate access to the spring.   He had the privilege of doing this, but it was optional with him to exercise that privilege or not.   It was, therefore, error to refuse to charge this principle and to charge to the contrary.

2. The motion for continuance in this case is defective in failing to show that it was not made for delay only, and that defendants expected, at the next term of the court, to have the benefit of the services of counsel who was absent from sickness.

May 9, 1887.

State.  Indian  Spring.  Laws.  Continuance.  Before Judge BOYNTON.  Butts Superior Court.  March Term, 1886.

To the report contained in the decision, the following ground of the motion for a new trial is added, in explanation of the ruling concerning a continuance :   Because the court erred in forcing defendant Lamar into the trial of said case under the following circumstances :   It being represented to the court that Mr. W. Dessau, of Macon, Georgia, was the sole counsel for Lamar, and was then sick and confined to his bed in Macon, which facts were proved in open court by Colonel Lamar under oath and were ac-

cepted as true by counsel for plaintiff and by the court; the court then asked whether the plaintiff had in his bill any claim for mesne profits; the plaintiff's counsel replied that he had, but that he would strike them out and not insist upon the same. It being represented to the court that the mill property was also involved in this case, plaintiff's counsel said that there was an agreement between himself and Mr. Dessau as to the mill property. Plaintiff's counsel then insisted that the third ground in defendant's demurrer was a disclaimer of title by H. J. Lamar, and that the said Lamar had no further interest in the cause and that there was no necessity for Mr. Dessau's presence. Defendant Bryan's attorney announced in open court that his client would look to Colonel Lamar for all damages that he might sustain by reason of his warrantee on the sale of certain rights and privileges in the reserve. Defendant Lamar, through counsel that he had just spoken to after the case had been sounded, represented to the court that the third ground of said demurrer had been inadvertently included in said demurrer by his counsel, and without any direction from him, and then moved to strike out said third ground, which plaintiff's counsel contended was a disclaimer of title by Lamar, which amendment was allowed by the court. Defendant Lamar then moved to continue said cause upon the ground of the sickness and absence of Mr. Dessau, stating that he was the sole counsel and that he had had no opportunity to explain the facts of his case to other counsel. The court overruled said motion for continuance and forced the case to trial under these circumstances, all of which defendants assign as error. The court added to this ground in the motion the following note :

"Mr. Anderson stated, by way of counter-showing, that he made no point as to the fact of Dessau's sickness, but objected to the continuance because Dessau, as Lamar's sole attorney, had filed a disclaimer of title or possssssion to the property in dispute; and that Mr. Dessau had a year before written him a letter, which had been mislaid, proposing that if he would allow the case to be continued until after the legislature adjourned, so as to give Lamar an oppor-

tunity to propose a new contract respecting the reserve to the legislature, Lamar would, if he and the legislature failed to agree, abandon all resistance to the State's claim to the reserve and surrender it to the State; and he (Mr. Anderson) had agreed to this proposal; and that Dessau, Lamar and himself had come to this court on the first day of this term with the understanding that this agreement would be carried out by his taking a decree; that the case had been postponed at Mr. Dessau's instance until Thursday, and in the meantime Mr. Dessau said that he did not understand that the agreement embraced the mill property, and Mr. Anderson, to accommodate this, agreed to amend the bill by striking all the allegations in the bill touching the mill, and the bill was so amended; and that Mr. Dessau had stated that if the mill was eliminated from the case, he would make no resistance to the taking of a decree. Mr. Rutherford then moved to strike the disclaimer, when the court said the disclaimer might be withdrawn, but not stricken from the records, but should remain for such legal use as might be made of the same. Then the court asked Mr. Anderson if he intended to claim mesne profits, and stated that the court was inclined to hold the showing for a continuance good if mesne profits were claimed. Mr. Anderson then abandoned all claim for mesne profits and the continuance was refused."

On the trial, the jury found that Lamar had forfeited his contract and that the property revert to the State. A new trial being refused, defendants excepted.

BACON & RUTHERFORD; DESSAU & BARTLETT; W. W. ANDERSON; A. D. HAMMOND, for plaintiffs in error.

CLIFFORD ANDERSON, attorney-general, for defendant.

HALL, Justice.

This was a suit at the instance of the governor of the State of Georgia against Henry J. Lamar and his co-defendant, Bryan, brought to forfeit their control to the management of the reservation at the Indian Spring. It was instituted under a resolution of the General Assembly, approved September 23d, 1883. This resolution was based upon information conveyed by the report of the attorney-general of the State, that "the lessee or agent" of the State in charge of the Indian Spring reserve had violated

the law under which that reserve was put in his charge, by "subletting" the same; and that the "sub-lessee," had failed to perform the duty required by the act under which the original agent or lessee went into possession. The object of the suit, which was against the original agent and the party claiming possession under him, was to forfeit their claims and recover possession of the property for the State, or to rescind the agreement under which Lamar and his transferee claimed the right in question. On the trial of the case, it was insisted that it was the duty of the defendants, the original agent and the party holding under him, to provide and keep open at all times and in reasonably good condition, roads or paths of ample width, admitting easy approach for the public to and from the spring to the public highway; and if it was necessary in order to provide this accommodation for the public, to construct bridges over the adjacent stream, then it was their duty to build and keep in safe condition such public paths or roads, of ample width and easy approach, to and from the spring to the public thoroughfare. And so the court charged the jury, and refused to charge, on defendants' written request, that Lamar was not bound to furnish bridges to the spring outside of the reserve; and further, that he was not bound to remove or ameliorate any dangerous places outside of the reserve. The court charged as above set forth, and refused to charge as requested. To this charge and refusal to charge, exception is taken in the 4th and 5th grounds of the motion for new trial.

1. We think that the charge as given and the refusal to charge as requested was error. Lamar held possession under a legislative act, approved 19th March, 1869, entitled an act to authorize improvements to be made on the reserve at the Indian Spring, to protect the same from trespass, and for other purposes therein mentioned. The preamble to the act recites that Lamar was in at the time of its passage, under a purchase from John G. Park, to whom the privilege had been granted by an act assented

to on the 30th of December, 1847; that Lamar was desirous of making, under certain conditions, other and additional improvements on the reserve, for the purpose of making the grounds more useful, attractive and pleasant, and the spring a more agreeable watering place. The first section of the act authorized him to construct and have made at his own expense such improvements, structures and enclosures as he might desire, upon the ten acres reserved and belonging to the State at and around Indian Spring, and to plant such trees, shrubbery or growth, to make such roads, promenades, walks, flower-gardens on such portions of ground as he might select as best adapted for the purpose; provided the free use of the water at the spring by any person should not be prevented; and the roads or paths of ample width, admitting an easy approach to and from the spring, should at all times be kept open for public use, and also a sufficient place immediately around the spring for the use and accommodation of visitors. The second section of the act granted to him, "his heirs and representatives," the right and privilege of using the grounds on the reserve that had been or might be improved or embellished by him or them for and during the term of thirty years, and of repairing, adding to and keeping in order any such improvements as he or they during the said term might construct or have made thereon. The last proviso in the third section of the act declared that he should not be prevented from building ice-houses, summer-houses, buildings for hobby-horses, houses for plays or amusements not forbidden by law, sheds for the accommodation and amusement of visitors, houses for bakery, ice-cream, sweetmeats, and a bridge or bridges across the streams adjacent to the spring. A former proviso of this section prohibited the erection of a hotel or other similar building to be let for rent. The section declares that for the purpose of protecting said spring and reserve from trespass by persons intruding thereon and destroying timbers or otherwise, the said Henry J.

Lamar be, and he is hereby, appointed agent on behalf of the State to prevent the same; and that if he shall neglect or decline at any time properly to attend thereto, the governor, for the time being, shall appoint some other suitable person such agent, with authority for the full performance of such agency.

This act licenses Lamar, his heirs and representatives, to make certain improvements, and to enjoy certain privileges, upon condition that he shall perform certain duties and render to the State such services as are therein specified.    Among other things, it was his duty to keep open roads or paths on the reserve of ample width to admit an easy approach to and from the spring for the use and accommodation of the public.    The terms of the act limit his power to make roads, promenades, walks, etc. to the ten acres reserved and belonging to the State at and around the spring, as also other buildings enumerated in the various sections of the act, together with a bridge or bridges across the stream adjacent to the spring.    The erection of these bridges are privileges conferred, and not duties imposed.    His obligations to the State in that respect were performed, if roads and bridges of ample width to afford an easy approach to and from the spring were at all times kept open for the public use on the reserve.    He was not compelled, in our judgment, to go beyond the boundaries of the reserve to open and keep in repair the roads and paths between the boundaries and the public highway for the accommodation of those visiting the spring, nor was he under obligation to erect bridges across contiguous streams outside of the reserve to facilitate access to the spring.    He had the privilege of doing this, and it was optional with him to exercise that privilege or to let it alone.    So we think there was error in refusing to give the charge embodied in the fifth ground, and in giving that embodied in the fourth ground of the amended motion for a new trial.    And on this ground alone we reverse the judgment.

2. We think there was no error in refusing to continue this case, for the reason that the showing made for continuance was defective, in that it failed to state that the showing was not made for delay only, or that the defendants expected to have the benefit of the services of counsel, absent from sickness, at the next term of the court.

The question as to the ruling about disclaimer of title need not now be considered, as there will be another hearing of the case, when it can be passed upon in all its aspects and bearings. Whether the governor can still exercise the right of removing Lamar from his agency and appointing another agent, or whether the transfer of possession and control by Lamar to Bryan is a violation of the contract, we do not determine. We see no objection to the legislature's transferring this right of removal from the executive to the courts, and are of opinion that the latter question should be passed upon by the court and jury under the facts which may be developed on the trial.

Judgment reversed.